# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| PINNACLE ADVISORY GROUP, INC.<br>6345 Woodside Court, Suite 100<br>Columbia, Howard County, Maryland 21046<br><br>      Plaintiff,<br><br>vs.<br><br>ANDREW J. KRONE<br>2182 Miramonte Way<br>Naples, Florida 34105,<br><br>and<br><br>CAPITALROCK FINANCIAL, LLC d/b/a<br>NAPLES WEALTH PLANNING<br>1016 Collier Center Way, Suite 201<br>Naples, Florida 34110,<br><br>      Defendants. | CASE No.<br><br><br><br>*Civil Action*<br><br>**VERIFIED COMPLAINT** |

Plaintiff, Pinnacle Advisory Group, Inc. ("**Pinnacle**" or "**Plaintiff**"), by way of Verified Complaint against Defendants Andrew J. Krone ("**Krone**") and CapitalRock Financial, LLC d/b/a/ Naples Wealth Planning ("**Naples Wealth**") (collectively, the "**Defendants**"), hereby alleges and states as follows:

## NATURE OF CASE

1. Pinnacle commences this litigation to enjoin and restrain the Defendants from, *inter alia*, the continued misappropriation of Pinnacle's intellectual property and conversion of Pinnacle's property resulting from Krone's breach of an employment agreement, including a non-solicitation clause contained therein. By way of this Verified Complaint, Pinnacle seeks: (a) the recovery of any and all revenues enjoyed by Defendants as a result of their misappropriation

-1-

4815-8013-2520, v. 3

of Pinnacle's intellectual property and related wrongful acts set forth in greater detail below; (2) the return of property wrongfully removed by Krone; and, more critically, (3) the immediate imposition of temporary restraints and permanent injunctive relief preventing Defendants from causing irreparable harm to Pinnacle's legitimate business interests.

## PARTIES

2. Pinnacle is a Maryland Corporation maintaining its principle place of business at 6345 Woodside Court, Suite 100, Columbia, Maryland 21046.

3. Krone is an individual residing at 2182 Miramonte Way, Naples, Florida 34105.

4. Naples Wealth is a Florida limited liability company maintaining its principle place of business at 1016 Collier Center Way, Suite 201, Naples, Florida 34110.

5. The members of Naples Wealth are Kevin G. Simpson and Joann M. Irons who are both domiciled in Florida.

6. All members of Naples Wealth are domiciled in the State of Florida and none are domiciled in the State of Maryland.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332(a), inasmuch as complete diversity of citizenship exists between the parties and the amount in controversy is in excess of $75,000.

8. Venue is appropriately laid in the United States District Court for the District of Maryland, under and pursuant to 28 U.S.C. §1391(b)(2) as the Plaintiff's principal place of business is located within the District of Maryland and the Employment Agreement that is the subject of this litigation provides for a venue within the State of Maryland and the choice of Maryland law. *See* Exhibit "A."

## MATERIAL FACTS

9. Founded in 1993, Pinnacle is a private wealth management firm.

10. Pinnacle is engaged in the business of financial planning and investment, asset management, and other financial services.

### Pinnacle and Krone Enter Into An Employment Agreement

11. On or about October 1, 2009 Pinnacle hired Krone.

12. On or about May 5, 2010, Pinnacle and Krone executed an Employment Agreement (the "**Agreement**").

13. A true and correct copy of the Agreement is attached hereto as Exhibit "A."

14. Among other things the Agreement provides that:

[Krone] agrees, during the Initial Term of employment and for any Addition Term, and for one year following the termination of [Krone]'s employment for any reason, [Krone] will not perform or render services or attempt to perform or render services, for his own account or on behalf of any person or corporation other than the Company, for any customer or client of Company for which [Krone] (or employees under his managerial control) has performed any services ("Company Clients"). This restriction does not apply to Pinnacle Advisory Group clients that were served by [Krone] prior to his joining Pinnacle Advisory Group.

*See* Exhibit "A," § 9(B).

15. Further, that:

[Krone] acknowledges that as a result of his employment with the Company, [Krone] has, is and will be making use of, acquiring, and adding to information of a special and unique nature and value relating the Company's intellectual property, trade secrets and other confidential information. In that regard, [Krone] agrees to the following:

A. All files, notes, data, reference items, sketches, drawings, memoranda, records, books, computer programs, and other materials in any way relating to any of the information referred to in the paragraph above or to the Company's business shall belong exclusively to the Company. [Krone] agrees to turn over to the Company all copies of such materials in [Krone]'s possession or control at the Company's request or upon the termination of [Krone]'s employment. [Krone] shall not, at any time during or following his employment with the Company, divulge or

-3-

disclose, or employ for any purpose whatsoever, except as necessary to accomplish the business objectives of the Company, any of the Company's trade secrets or other confidential information that have been obtained by or disclosed to [Krone] as a result of [Krone]'s employment with the Company.

. . .

D. [Krone] acknowledges that any breach of this Section will cause irreparable harm to the Company and entitle the Company to injunctive or other equitable relief, as well as damages. Damages shall include, but are not limited to, [Krone]'s payment of the court costs and reasonable attorneys' fees incurred by the Company to enforce this Agreement.

*See* Exhibit "A," § 10.

16. The Agreement additionally sets forth that either Pinnacle or Krone may terminate the Agreement without cause upon thirty (30) days written notice. *See* Exhibit "A," § 8(B) and (C).

17. On or about October 20, 2010 Pinnacle and Krone modified the Agreement.

18. A true and correct copy of the modification is attached hereto as Exhibit "B."

19. The October 20, 2010 modification was limited to sections 9(A) and 13(C) of the Agreement and did not change the above referenced sections.

20. From approximately October 1, 2009 until August 30, 2019, Krone enjoyed employment with Pinnacle.

21. During that time, Krone maintained access to Pinnacle's intellectual property, trade secrets, customer information, and other confidential information, as noted above.

22. Pinnacle took and takes reasonable steps to protect its intellectual property, trade secrets, customer information, and other confidential information, by requiring that employees sign documents like the Agreement, and maintaining security measures over electronic, among other things.

4815-8013-2520, v. 3

### Krone Improperly Resigns Without Notice

23. On or about August 30, 2019, Krone breached the Agreement by tendering his immediate resignation to Pinnacle.

24. Pursuant to the Agreement, Krone was required to give thirty days' notice to Pinnacle.

25. A true and correct copy of the letter memorializing Krone's resignation is attached hereto as Exhibit "C."

26. Though Krone vaguely acknowledged a "contract" and "agreement" in his resignation, he failed to provide any notice, let alone the thirty (30) days required by the Agreement. *See* Exhibit "C."

27. He simply stated that his resignation is effective immediately, that he "left behind all items belonging to Pinnacle," and that he "overnighted [his] office keys." Id.

### Krone Wrongfully Solicits Pinnacle Clients

28. Additionally set forth in Krone's letter of resignation, is the following request:

> There are numerous clients that I brought to Pinnacle from my prior employer that are exempted from certain provisions in our contract. I expect Pinnacle to honor our agreement by refraining to contact those clients, and if contacted by them, to kindly provide them with my contact information above.

Exhibit "C."

29. In doing so, Krone acknowledged the Agreement and the general measures that Pinnacle seeks to enforce by and through this action.

30. However—contrary to Krone's request—the Agreement does not restrain Pinnacle from contacting its clients, even those exempted from the restrictions set forth in the Agreement. *See* Exhibits "A" and "B."

4815-8013-2520, v. 3

31. Nonetheless, on September 6, 2019 Pinnacle wrote in response to Krone and Naples Wealth—Krone's new employer—in good faith advising both of the restrictions set forth in the Agreement and requesting a list of clients that Krone believed to be exempted from the Agreement.

32. A true and correct copy of the September 6, 2019 letter from Pinnacle to Naples Wealth is attached hereto as Exhibit "D."

33. Pinnacle did not receive an immediate response to this request.

34. Rather, Pinnacle received notice from its clients that Krone was contacting them for the purpose of transferring their accounts from Pinnacle to Naples Wealth, Krone's new employer.

35. Specifically, on or about September 17, 2019, Krone sent a handwritten note on Naples Wealth letterhead to a certain Pinnacle client, advertising Naples Wealth products, criticizing Pinnacle products, and offering a call with other Naples Wealth employees.

36. A true and correct copy of the September 17, 2019 handwritten note is attached hereto and incorporated as if set forth herein as Exhibit "E."

37. This handwritten note is a solicitation of Pinnacle clients in violation of the Agreement.

38. At or around the same time, Pinnacle received notices from other clients that they would be transferring their account from Pinnacle to Naples Wealth.

39. Based on the very specific performance data he cites in his note, it is clear that Krone took confidential client portfolio reporting information from Pinnacle prior to or at the time of his resignation.

40. Upon a review of his computer records, it appears that Krone was running/downloading client portfolio reports during his last few weeks at Pinnacle.

41. Krone also redirected Pinnacle's primary contact at a custodian—with whom Pinnacle participates in a client referral program—from a Pinnacle email address to Krone's personal email address.

42. Pinnacle further discovered that Krone placed three phone calls to Pinnacle clients and one call to the CPA of a Pinnacle client after the date of his resignation.

43. Pinnacle further discovered that Krone personally met with a Pinnacle client, who later informed Pinnacle that it was transferring its account to Krone and Naples Wealth.

44. These calls and meetings constitute solicitation of Pinnacle clients in violation of the Agreement.

45. On September 20, 2019, Pinnacle wrote to Krone and Naples Wealth noting this wrongful retention and use of Pinnacle intellectual property, trade secrets, and confidential information and also his solicitation of Pinnacle clients.

46. The letter further directed both Krone and Naples Wealth to cease and desist from such conduct.

47. A true and correct copy of the September 20, 2019 letter from Pinnacle to Krone and Naples Wealth is attached hereto as Exhibit "F."

48. On September 24, 2019, Krone replied and acknowledged sending the handwritten note.

49. A true and correct copy of the September 24, 2019 letter from Krone to Pinnacle is attached hereto as Exhibit "G."

4815-8013-2520, v. 3

50. Krone assured Pinnacle that he would refrain from sending any further letters and that he would not violate the Agreement. Exhibit "G."

51. Moreover, Krone finally provided a list of clients that he contended were exempt from the restrictions set forth in the Agreement.

52. Despite that promise, Krone continues to violate the Agreement.

53. Not including the accounts claimed to be exempt by Krone, Pinnacle has lost approximately nineteen (19) accounts previously managed by Krone.

54. These accounts were lost both before and after Pinnacle's service of its cease and desist letter and Krone's affirmance of the Agreement.

55. It is upon information and belief that these accounts are now managed by Krone at Naples Wealth.

## COUNT ONE
(Declaratory Judgment)

56. Pinnacle repeats and hereby alleges each and every preceding paragraph of this Verified Complaint as if fully set forth herein.

57. The Declaratory Judgment Act states in pertinent part, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. §2201(a).

58. Pinnacle and Krone entered into the Agreement that contains certain terms.

59. *Inter alia,* those terms include a restrictive covenant and non-solicitation agreement.

60. Pursuant to the 28 U.S.C. § 2201, Pinnacle is entitled to declaratory judgment affirming and enforcing Pinnacle's rights under the terms of the Agreement.

4815-8013-2520, v. 3

**WHEREFORE,** Plaintiff, Pinnacle Advisory Group, Inc. hereby demands judgment against Defendants Andrew Krone and CapitalRock Financial, LLC, jointly and severally, temporarily, preliminarily and permanently enjoining Defendants from further solicitation of Pinnacle clients, and enjoining Defendants from further misappropriating Pinnacle's Confidential Information and Trade Secrets, ordering the immediate return of all Pinnacle Confidential Information and Trade Secrets, directing an accounting, awarding Plaintiff compensatory, incidental, consequential and punitive damages, together with reasonable attorneys' fees, litigation costs, investigation costs, costs of suit, interest, and any such additional relief as this Court may deem necessary, appropriate and just.

## COUNT TWO
### (Breach of Contract)

61. Pinnacle repeats and hereby alleges each and every preceding paragraph of this Verified Complaint as if fully set forth herein.

62. Pinnacle and Krone entered into a valid and enforceable Agreement.

63. The Agreement, which Krone signed at the inception of his employment with Pinnacle, is supported by consideration.

64. Krone confirmed his agreement to be bound by the terms of the Agreement.

65. The Agreement, together with the October 20, 2010 modification, was not superseded by any subsequent agreement between Pinnacle and Krone, meaning it remains in full force and effect.

66. Among other provisions, under the Agreement, Krone agreed that, for a period of twelve months following his separation from employment, he would not "perform or render services or attempt to perform or render services, for his own account or on behalf of any person or corporation other than the Company, for any customer or client of Company for which

[Krone] (or employees under his managerial control) has performed any services ("Company Clients"). See Exhibit "A," § 9(B).

67. As detailed herein, Krone has breached this provision of the Agreement.

68. Under the Agreement, Krone further agreed that he would not disclose Pinnacle's Confidential Information and Trade Secrets. See Exhibit "A," § 10.

69. As detailed herein, Krone breached this provision of the Agreement.

70. Furthermore, Krone agreed that he would provide thirty days' notice to Pinnacle in the event that he elected to terminate the Agreement. See Exhibit "A," § 8(C).

71. As detailed herein, Krone breached this provision of the Agreement.

72. As a direct result of Krone's breaches of his contractual obligations to Pinnacle in the Agreement, Pinnacle has been damaged in an amount to be determined at trial.

73. In addition, pursuant to the terms of the Agreement, Pinnacle is entitled to recover its attorneys' fees and costs incurred due to Krone's breach of the Agreement.

**WHEREFORE,** Plaintiff, Pinnacle Advisory Group, Inc. hereby demands judgment against Defendants Andrew Krone and CapitalRock Financial, LLC, jointly and severally, temporarily, preliminarily and permanently enjoining Defendants from further solicitation of Pinnacle clients, and enjoining Defendants from further misappropriating Pinnacle's Confidential Information and Trade Secrets, ordering the immediate return of all Pinnacle Confidential Information and Trade Secrets, directing an accounting, awarding Plaintiff compensatory, incidental, consequential and punitive damages, together with reasonable attorneys' fees, litigation costs, investigation costs, costs of suit, interest, and any such additional relief as this Court may deem necessary, appropriate and just.

## COUNT THREE
**(Breach of the Covenant of Good Faith and Fair Dealing)**

4815-8013-2520, v. 3

74. Pinnacle repeats and hereby alleges each and every preceding paragraph of this Verified Complaint as if fully set forth herein.

75. In every contract executed in Maryland, involving Maryland parties or governed by Maryland law, there is an implied covenant of good faith and fair dealing.

76. In receiving the general benefits of his employment and relationship with Pinnacle as well as certain access to Pinnacle's trade secrets and Confidential Information and Trade Secrets, Krone entered into an enforceable contract, the Agreement.

77. Krone acted in bad faith and with improper motive to destroy or injure the rights and business interests of Pinnacle, which was entitled to receive the benefits and reasonable expectations of the Agreement.

78. Pinnacle has suffered damages as a direct and proximate result of the breach of good faith and fair dealing by Krone.

**WHEREFORE,** Plaintiff, Pinnacle Advisory Group, Inc. hereby demands judgment against Defendants Andrew Krone and CapitalRock Financial, LLC, jointly and severally, temporarily, preliminarily and permanently enjoining Defendants from further solicitation of Pinnacle clients, and enjoining Defendants from further misappropriating Pinnacle's Confidential Information and Trade Secrets, ordering the immediate return of all Pinnacle Confidential Information and Trade Secrets, directing an accounting, awarding Plaintiff compensatory, incidental, consequential and punitive damages, together with reasonable attorneys' fees, litigation costs, investigation costs, costs of suit, interest, and any such additional relief as this Court may deem necessary, appropriate and just.

## COUNT FOUR
### (Violation of the Maryland Uniform Trade Secrets Act)

79. Pinnacle repeats and hereby alleges each and every preceding paragraph of this

4815-8013-2520, v. 3

Verified Complaint as if fully set forth herein.

80. Each Defendant is a "person" as defined by the Maryland Uniform Trade Secrets Act ("**MUTSA**") codified at MD Comm L. Code § 11-1201 (2016).

81. By virtue of Krone's employment relationship with Pinnacle, he was given access to Pinnacle's Confidential Information and Trade Secrets.

82. Pinnacle's Confidential Information and Trade Secrets, including its pricing, investment strategies, client lists and confidential client information, such as revenue information, assets under management, nature of investments, investment allocations, investment fund selections, and client goals, are trade secrets as defined by MUTSA.

83. The Confidential Information and Trade Secrets are kept confidential and are not publicly disclosed. Pinnacle derives value from the secrecy of this information.

84. Krone communicated Pinnacle's Confidential Information and Trade Secrets to third parties, including Naples Wealth.

85. Using Pinnacle's Confidential Information and Trade Secrets, the Defendants have wrongfully solicited Pinnacle's clients on behalf of Naples Wealth.

86. Krone and Naples Wealth used Pinnacle's Confidential Information and Trade Secrets to negotiate their respective engagements with third parties, including with former Pinnacle clients.

87. The Defendants have misappropriated and used Pinnacle's Confidential Information and Trade Secrets, including but not limited to Pinnacle's pricing, investment strategies, client lists and confidential client information, such as revenue information, assets under management, nature of investments, investment allocations, investment fund selections, and client goals.

88. As a direct and proximate result of Defendants' misappropriation of Pinnacle's Confidential Information and Trade Secrets, Pinnacle has suffered and will continue to suffer substantial damages, including but not limited to, the loss of revenue, clients, goodwill and market share.

89. Defendants' conduct is willful, intentional, malicious, unprivileged, and in bad faith and has caused (and will continue to cause) actual loss to Pinnacle in the form of actual damages to Pinnacle and unjust enrichment to the Defendants.

90. As a direct result of the Defendants' intentional and egregious misappropriation of trade secrets in violation of MUTSA, Pinnacle has been damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff, Pinnacle Advisory Group, Inc. hereby demands judgment against Defendants Andrew Krone and CapitalRock Financial, LLC, jointly and severally, temporarily, preliminarily and permanently enjoining Defendants from further solicitation of Pinnacle clients, and enjoining Defendants from further misappropriating Pinnacle's Confidential Information and Trade Secrets, ordering the immediate return of all Pinnacle Confidential Information and Trade Secrets, directing an accounting, awarding Plaintiff compensatory, incidental, consequential and punitive damages, together with reasonable attorneys' fees, litigation costs, investigation costs, costs of suit, interest, and any such additional relief as this Court may deem necessary, appropriate and just.

## COUNT FIVE
### (Conversion)

91. Pinnacle repeats and hereby alleges each and every preceding paragraph of this Verified Complaint as if fully set forth herein.

92. Defendants had and have access to Pinnacle's Confidential Information and Trade

4815-8013-2520, v. 3

Secrets.

93. Without authorization, the Defendants wrongfully converted Pinnacle's property for their direct benefit.

94. Pinnacle has suffered damages as a direct and proximate result of the Defendants' conversion of Pinnacle's property.

**WHEREFORE,** Plaintiff, Pinnacle Advisory Group, Inc. hereby demands judgment against Defendants Andrew Krone and CapitalRock Financial, LLC, jointly and severally, temporarily, preliminarily and permanently enjoining Defendants from further solicitation of Pinnacle clients, and enjoining Defendants from further misappropriating Pinnacle's Confidential Information and Trade Secrets, ordering the immediate return of all Pinnacle Confidential Information and Trade Secrets, directing an accounting, awarding Plaintiff compensatory, incidental, consequential and punitive damages, together with reasonable attorneys' fees, litigation costs, investigation costs, costs of suit, interest, and any such additional relief as this Court may deem necessary, appropriate and just.

## COUNT SIX
**(Tortious Interference with Contract/Economic Advantage)**

95. Pinnacle repeats and hereby alleges each and every preceding paragraph of this Verified Complaint as if fully set forth herein.

96. Pinnacle has agreements with its clients to provide wealth management services in exchange for a fee.

97. Krone was privy to Pinnacle's Confidential Information and Trade Secrets, including its client information, by virtue of his employment.

98. Krone communicated Pinnacle's Confidential Information and Trade Secrets to third parties in violation of his contractual and statutory obligations to Pinnacle.

4815-8013-2520, v. 3

99. As described above in greater detail, Defendants then used Pinnacle's Confidential Information and Trade Secrets, including its client information, to interfere with Pinnacle's contractual and business relations with its clients.

100. Defendants had no privilege or justification to use Pinnacle's Confidential Information and Trade Secrets to interfere with the contractual or prospective business relations that Pinnacle has with its clients.

101. Defendants, through their intentional acts, have intentionally interfered with the contractual and/or prospective contractual relationships that Pinnacle has with its clients.

102. As a direct result of the Defendants' intentional and egregious conduct by tortiously interfering with Pinnacle's contractual and prospective business relationships with its clients, Pinnacle has been damaged in an amount to be determined at trial

**WHEREFORE,** Plaintiff, Pinnacle Advisory Group, Inc. hereby demands judgment against Defendants Andrew Krone and CapitalRock Financial, LLC, jointly and severally, temporarily, preliminarily and permanently enjoining Defendants from further solicitation of Pinnacle clients, and enjoining Defendants from further misappropriating Pinnacle's Confidential Information and Trade Secrets, ordering the immediate return of all Pinnacle Confidential Information and Trade Secrets, directing an accounting, awarding Plaintiff compensatory, incidental, consequential and punitive damages, together with reasonable attorneys' fees, litigation costs, investigation costs, costs of suit, interest, and any such additional relief as this Court may deem necessary, appropriate and just.

## COUNT SEVEN
### (Unfair Competition)

103. Pinnacle repeats and hereby alleges each and every preceding paragraph of this Verified Complaint as if fully set forth herein.

-15-
4815-8013-2520, v. 3

104. Defendants, by engaging in the conduct described above, have engaged in unfair competition with Pinnacle. Their conduct has caused (and will continue to cause) damage to Pinnacle's business relationships with its clients and other valuable business interests.

105. Defendants' conduct has been (and continues to be) willful, intentional and unprivileged and has caused (and will continue to cause) Pinnacle to suffer immediate, irreparable harm, as well as other compensatory damages.

106. Defendants' conduct, as described above, is contrary to honest industrial and commercial practices

107. As a direct result of Defendants unfair competition, Pinnacle has been damaged in an amount to be determined at trial.

**WHEREFORE,** Plaintiff, Pinnacle Advisory Group, Inc. hereby demands judgment against Defendants Andrew Krone and CapitalRock Financial, LLC, jointly and severally, temporarily, preliminarily and permanently enjoining Defendants from further solicitation of Pinnacle clients, and enjoining Defendants from further misappropriating Pinnacle's Confidential Information and Trade Secrets, ordering the immediate return of all Pinnacle Confidential Information and Trade Secrets, directing an accounting, awarding Plaintiff compensatory, incidental, consequential and punitive damages, together with reasonable attorneys' fees, litigation costs, investigation costs, costs of suit, interest, and any such additional relief as this Court may deem necessary, appropriate and just.

## COUNT EIGHT
### (Unjust Enrichment)

108. Pinnacle repeats and hereby alleges each and every preceding paragraph of this Verified Complaint as if fully set forth herein.

109. As a result of the actions described herein, Defendants have been enriched and

enjoyed a certain degree of revenues, profitability and other benefits stemming primarily from the Defendants' misappropriation of Pinnacle's Confidential Information and Trade Secrets and tortious interference with Pinnacle's business interests.

110. Defendants' retention of any such benefits would be unjust.

111. To the extent Defendants have been unjustly enriched at the expense and to the detriment of Pinnacle, Pinnacle has been damaged.

**WHEREFORE,** Plaintiff, Pinnacle Advisory Group, Inc. hereby demands judgment against Defendants Andrew Krone and CapitalRock Financial, LLC, jointly and severally, temporarily, preliminarily and permanently enjoining Defendants from further solicitation of Pinnacle clients, and enjoining Defendants from further misappropriating Pinnacle's Confidential Information and Trade Secrets, ordering the immediate return of all Pinnacle Confidential Information and Trade Secrets, directing an accounting, awarding Plaintiff compensatory, incidental, consequential and punitive damages, together with reasonable attorneys' fees, litigation costs, investigation costs, costs of suit, interest, and any such additional relief as this Court may deem necessary, appropriate and just.

## JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact in accordance with Federal Rule of Civil Procedure 38(b).

>                          Respectfully submitted,
>
>                          _s/ Elliot Belilos_
>                          Elliot Belilos, Esq., Bar No. 15981
>                          Joseph Mason Weeda, Esq., Bar No. 18276
>                          Olsson Frank Weeda Terman Matz, PC
>                          2000 Pennsylvania Ave., NW
>                          Suite 300
>                          Washington, D.C. 20006

4815-8013-2520, v. 3

T: 202.518.6358
ebelilos@ofwlaw.com
mwccda@ofwlaw.com

*Pending Admission Pro Hac Vice*
Scott I. Unger, Esq.
Brian E. Kasper, Esq.
Stark & Stark Attorneys at Law
993 Lenox Drive
Lawrenceville, NJ 08648
T: 609.896.9060
SUnger@stark-stark.com
BKasper@stark-stark.com

Dated: October 10, 2019

## VERIFICATION

I, Erin Wendell, the Chief Financial Officer & Chief Compliance Officer of Pinnacle Advisory Group, Inc., declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

*Erin Wendell*
ERIN WENDELL

Dated: October 9, 2019

4815-8013-2520, v. 3