IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PINNACLE ADVISORY
GROUP, INC.,
    *Plaintiff*,

v.

ANDREW J. KRONE, *et al*.,
    *Defendant*.

Civil No. ELH-19-2988

**MEMORANDUM**

On October 14, 2019, plaintiff Pinnacle Advisory Group, Inc. ("Pinnacle"), a private wealth management firm, filed suit against its former employee, Andrew Krone, and his employer, CapitalRock Financial, LLC d/b/a Naples Wealth Planning ("Naples"). ECF 1 (the "Complaint"). The suit included several exhibits. Pinnacle asserts various claims founded on Maryland law, sounding in contract, tort, and trade secret law. *Id.* at 8-17. It seeks declaratory and injunctive relief as well as damages. *Id.*

In particular, Pinnacle alleges that Mr. Krone, who was a Pinnacle employee from October 1, 2009 to August 30, 2019, misappropriated Pinnacle's confidential information upon his resignation on or about August 30, 2019, when he left Pinnacle to begin working for Naples. According to plaintiff, Mr. Krone used that confidential information to solicit Pinnacle's clients, in violation of trade secret law and in breach of his employment agreement with Pinnacle.

On November 8, 2019, with the consent of the parties, the Court issued an "Agreed Order" (ECF 35), directing defendants, *inter alia*, to return any confidential information belonging to Pinnacle and enjoining them from performing or rendering services for, or soliciting the business of, certain past or present clients of Pinnacle. *Id.*

Now pending is Pinnacle's motion for leave to amend the Complaint (ECF 88), supported by a relatively barebones memorandum of law. ECF 88-1 (collectively, the "Motion"). In the Motion, filed March 19, 2021, Pinnacle seeks to add allegations concerning Mr. Krone's alleged breach of a fiduciary duty owed to Pinnacle, and to add a new defendant: Laidlaw Wealth Management, LLC ("Laidlaw"). In addition, plaintiff seeks to extend the "Agreed Order" to Laidlaw. *See* ECF 35; ECF 86. The Motion is accompanied by a proposed Amended Verified Complaint (ECF 88-4, the "Proposed Amended Complaint" or "Proposed AC").

Defendants oppose the Motion (ECF 94) and include one exhibit. Plaintiff has not replied and the time to do so has expired. *See* Local Rule 105.2(a).

No hearing is necessary to resolve the Motion. Local Rule 105.6. For the reasons that follow, I shall deny the Motion.

## I. Background

I incorporate here the factual background and procedural history set forth in my Memorandum Opinion of March 18, 2020 (ECF 46), denying Mr. Krone's motion to compel arbitration (ECF 37). As necessary, I have supplemented the facts.

On April 28, 2020, the Court issued a Scheduling Order (ECF 55), which set a deadline of September 30, 2020, for joinder of additional parties and amendment of pleadings. At the parties' joint request, the Court amended the schedule by Order of September 4, 2020 (ECF 60), which extended the deadline for joinder and amendment to October 31, 2020. *See id.*; ECF 59-1. As the parties were actively engaged in discovery, the schedule was subsequently amended several times, although those amendments did not affect the deadline for joinder and amendment. *See* ECF 62; ECF 73; ECF 82; ECF 101. Currently, discovery is set to close on May 31, 2021, and dispositive pretrial motions are due by June 29, 2021 (ECF 101)—over a year and a half after suit was filed.

According to Pinnacle, Naples "sold most, if not all, of its assets to Laidlaw at the end of August, 2020—including the accounts held by former Pinnacle customers and its relationship with Krone." ECF 88-1 at 10 (citing Proposed AC, ¶¶ 76-78). Defendants, on the other hand, assert that Laidlaw acquired some of Naples' assets in October 2020, but Naples "retained certain . . . assets and all liabilities, including this litigation." ECF 94 at 7. Moreover, they assert: "Krone became an independent contractor of Laidlaw." *Id.*

Notably, defendants observe that the acquisition was publicly announced. *See* ECF 94-1 (containing a copy of a press release dated October 19, 2020).[1] In addition, defendants contend that defense counsel was informed of Naples' partial acquisition by Laidlaw in "late 2020." ECF 94 at 7.

On January 12, 2021, defense counsel filed a disclosure statement, pursuant to Local Role 103.3 (ECF 74), indicating that Naples has an affiliation with Laidlaw and that Laidlaw might have a financial interest in the outcome of this litigation. *Id.*[2] Defendants assert, albeit without any evidence in support, that Pinnacle "issued a subpoena *duces tecum* to Laidlaw, and began receiving documents from Laidlaw's separate counsel on February 11, 2021." ECF 94 at 7.

Mr. Krone was deposed on February 11, 2021. ECF 88-1 at 10. According to Pinnacle, Krone testified "that his current employer was '[Naples].'" *Id.* (citing Proposed AC, ¶ 81). But, two weeks later, Mr. Krone provided supplemental answers to Pinnacle's interrogatories, stating,

---

[1] The press release is publicly accessible. *See Laidlaw Wealth Management Acquires Naples Wealth Planning*, Presswire (Oct. 19, 2020), https://www.einpresswire.com/article/528748016 (last visited May 9, 2021) (characterizing the transaction between Laidlaw and Naples as an "acquisition" and "partnership," and indicating that Naples "will continue to operate under [its] valued brand"). Publicly available sources may be judicially noticed, pursuant to Fed. R. Evid. 201.

[2] Pinnacle asserts that ECF 74 does not fully comply with Local Rule 103.3. I address this contention, *infra*.

3

in relevant part: "'[Mr. Krone] is no longer working as an independent contractor for [Naples]. Krone currently provides investment services for Laidlaw Wealth Management, LLC as an independent contractor.'" ECF 88-1 at 10 (citing Proposed AC, ¶ 82). Further, Pinnacle asserts, upon information and belief, that "Krone has been providing services for Pinnacle's former clients for the benefit of Laidlaw since August 31, 2020 or shortly thereafter." ECF 88-1 at 10-11 (citing Proposed AC, ¶ 83).

In addition, Naples asserts that in mid-March 2021, it "received credible information" that Pinnacle was "deep into the process of being acquired by Congress Wealth," and that the acquisition was "apparently due to close on May 1, 2021." ECF 94 at 7. According to Naples, this alleged sale "could very well have significant implications" for this litigation. These assertions, too, are unsubstantiated. In any event, the alleged acquisition of Pinnacle by a third party has no direct bearing on the issues raised in the Motion.

## II. Discussion

As indicated, Pinnacle seeks leave to amend the suit after expiration of the deadline set by the amended Scheduling Order of September 4, 2020. *See* ECF 60. Fed. R. Civ. P. 16(b)(4) concerns modification of scheduling orders. And, Fed. R. Civ. P. 15(a) addresses amendment of pleadings. Both rules are pertinent here.

### A.

A complaint may be amended "once as a matter of course" within twenty-one days of service of a defendant's answer or motion under Fed. R. Civ. P. 12(b), (e), or (f), "whichever is earlier." Fed. R. Civ. P. 15(a)(1)(b). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The court "should freely give leave when justice so requires." *Id.* However, where a party "moves to amend

after the deadline established in the scheduling order for doing so, Rule 16(b)(4) becomes the starting point in the Court's analysis." *Wonasue v. Univ. of Maryland Alumni Ass'n*, 295 F.R.D. 104, 106 (D. Md. 2013); *see Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 152 (4th Cir. 2020).

Fed. R. Civ. P. 16 concerns scheduling and case management. Scheduling orders serve a vital purpose in helping a court manage its civil caseload. *Gestetner Corp. v. Case Equipment Co.*, 108 F.R.D. 138, 141 (D. Me. 1985); *see also Naughton v. Bankier*, 14 Md. App. 641, 653, 691 A.2d 712, 718 (1997) (recognizing that a scheduling order helps "to maximize judicial efficiency and minimize judicial inefficiency"). Notably, "[i]n an era of burgeoning case loads and [crowded] dockets, effective case management has become an essential tool for handling civil litigation." *Tower Ventures, Inc. v. City of Westfield*, 296 F.3d 43, 45 (1st Cir. 2002) (alteration added). To that end, a scheduling order is an important vehicle in "'securing the just, speedy, and inexpensive determination of every action.'" *Miller v. Transcend Services, Inc.*, 10 CV 362, 2013 WL 1632335, at *4 (M.D.N.C. Apr. 16, 2013) (citation omitted).

A scheduling order is also mandatory. Rule 16(b)(1) states that, subject to certain exceptions, "the district judge . . . must issue a scheduling order." Further underscoring the importance of a scheduling order to case management, Rule 16(b)(2) commands that a scheduling order be issued "as soon as practicable" after a defendant has been served or appeared in a case. Moreover, Rule 16(b)(4) provides: "A schedule may be modified only for good cause and with the judge's consent." Thus, Rule 16 "recognize[s] . . . that the parties will occasionally be unable to meet . . . deadlines [in a scheduling order] because scheduling order deadlines are established relatively early in the litigation." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 154 (1st Cir. 2004). But, under Rule 16(b)(4), a movant must demonstrate good cause to satisfy the

5

requirement for a modification. *See Faulconer*, 808 F. App'x at 152; *Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298 (4th Cir. 2008); *Wonasue*, 295 F.R.D. at 106-07; *see also United States v. Hartford Accident & Indem. Co.*, No. CV JKB-14-2148, 2016 WL 386218, at *5 (D. Md. Feb. 2, 2016) ("The burden for demonstrating good cause rests on the moving party.").

The "'touchstone'" of Rule 16(b)(4)'s "good cause requirement is 'diligence.'" *Faulconer*, 808 F. App'x at 152 (citation omitted). The Fourth Circuit has endorsed this proposition several times, in line with other circuits. *Id.* at 152 n.1 (collecting cases). "[O]nly diligent efforts to comply with the scheduling order can satisfy Rule 16's good cause standard." *Id.* at 152; *accord Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) ("Lack of diligence and carelessness are 'hallmarks of failure to meet the good cause standard.'") (citation omitted).

In evaluating diligence, courts focus mainly "on the timeliness of the motion to amend 'and the reasons for its tardy submission.'" *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 520 (D. Md. 2014) (quoting *CBX Techs., Inc. v. GCC Techs., LLC*, No. JKB–10–2112, 2012 WL 3038639, at *4 (D. Md. July 24, 2012)). Notably, "[c]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." *Wonasue*, 295 F.R.D. at 107 (quoting *CBX Technologies, Inc.*, 2012 WL 3038639, at *4).

If, for example, the "moving party knew of the underlying conduct giving rise to a claim but simply failed to raise it in an initial complaint, then the party" has not acted diligently, and thus "cannot establish good cause under Rule 16." *Faulconer,* 808 F. App'x at 152. In contrast, where "'at least some of the evidence needed for a plaintiff to prove his or her claim did not come to light until after the amendment deadline,' a plaintiff has 'good cause' for moving to amend at a later date." *Wonasue*, 295 F.R.D. at 107 (quoting *Tawwaab v. Va. Linen Serv., Inc.*, 729 F.Supp.2d 757, 768 (D. Md. 2010)).

6

In determining whether the moving party has met his burden to show good cause, courts may also consider "whether the moving party acted in good faith, the length of the delay and its effects, and whether the delay will prejudice the non-moving party." *Elat*, 993 F. Supp. 2d at 520. However, "'[i]f the movant has not been diligent in meeting the scheduling order's deadlines,' then other factors . . . generally will not be considered.'" *Faulconer,* 808 F. App'x at 152 (quoting *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1034 (8th Cir. 2017)).  Some district court judges have expressed this proposition even more forcefully. *See, e.g.*, *Rassoull*, 209 F.R.D. at 374 ("'If [the moving party] was not diligent, the inquiry should end.'") (citation omitted); *Marcum v. Zimmer*, 163 F.R.D. 250, 254 (S.D.W. Va. 1995) ("'[T]he focus of the inquiry is upon the moving party's reasons for seeking modification. *If that party is not diligent, the inquiries should end*.'" (citation omitted) (emphasis in *Marcum*).

If the moving party demonstrates good cause pursuant to Rule 16(b)(4), he must then "satisfy the liberal standard of Fed. R. Civ. P. 15(a)." *Humane Soc'y of the United States v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, DKC-13-1822, 2016 WL 3668028, at *2 (D. Md. July 11, 2016); *see Cook v. Howard*, 484 Fed. Appx. 805, 814-15 (4th Cir. 2012); *Nourison*, 535 F.3d at 298; *Wonasue*, 295 F.R.D. at 106-07.  Under Rule 15(a), a court should deny leave to amend in three circumstances: "'when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile.'" *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Equal Rights Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010)); *see Scott v. Family Dollar Stores, Inc.*, 733 F.3d 105, 121 (4th Cir. 2013); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986).

In addition, courts have inherent power to manage their own dockets.  In *Link v. Wabash R. Co.*, 370 U.S. 626, 632 (1962), the Supreme Court stated that a court's "inherent power" to

dismiss a case for lack of prosecution is "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *See also Woodson v. Surgitek*, 57 F.3d 1406, 1417 (5th Cir. 1995) (observing that courts' inherent power permits "dismissing a case as a sanction for a party's failure to obey court orders").

### B.

The Proposed Amended Complaint contains two primary changes. First, it sets forth sixteen new paragraphs of factual allegations under the heading "Krone Breaches His Fiduciary Duty to Pinnacle." ECF 88-4, ¶¶ 26-41. Notably, the Proposed AC does not contain any new counts. In effect, Pinnacle seeks to add a claim for breach of fiduciary duty against Mr. Krone without adding a designated claim for breach of fiduciary duty. *See id.* at 14-22. Perhaps the failure to specify a new count was the result of an oversight or inartful drafting. For purposes of this Memorandum, however, I shall regard the sixteen paragraphs as if they amount to a claim for breach of fiduciary duty. Second, and perhaps more significant, the Proposed AC seeks to add Laidlaw as a defendant as to all counts. *See id.* at 14-22.

The Motion contains about one page of substantive analysis. Pinnacle seems to assume that the Motion is governed by Rule 15(a) alone. *See* ECF 88-1 at 10. It asserts that the proposed amendments are made in good faith, and that any resulting prejudice to defendants would be "undercut" by their failure timely and adequately to disclose their relationship to Laidlaw. *See id.* at 11-12. But, plaintiff fails to address Rule 16(b)(4), which provides the starting point for the analysis here. In particular, the Motion does not discuss whether plaintiff has satisfied Rule 16(b)(4)'s good cause requirement. Moreover, plaintiff never filed a reply to address the relevant standard, which was invoked in the opposition. *See* ECF 94 at 8.

It is far from clear that Pinnacle has been diligent in seeking leave to amend. As noted, diligence is the "'touchstone'" for the Rule 16(b)(4) analysis. *Faulconer,* 808 F. App'x at 152 (citation omitted). According to defendants, Pinnacle gained access to the information underlying the proposed fiduciary duty claim in September 2020, about six months before seeking leave to amend. *See* ECF 94 at 11. This assertion—which Pinnacle has not contested—suggests that Pinnacle did not promptly seek leave to amend to add the new claim.

Defendants also assert that Pinnacle sought leave to join Laidlaw as a party about two months after defendants' filing of their most recent Rule 103.3 disclosure statement and about one month after Pinnacle began receiving documents from Laidlaw in response to a subpoena. ECF 94 at 12. A delay of one to two months does not cry out as dilatory. Nevertheless, joinder of Laidlaw at this stage—about a year and a half into the litigation—would certainly prolong the resolution of the suit. Moreover, Pinnacle has not responded to defendants' assertion that Laidlaw did not acquire Naples' liabilities, which include this litigation. Under the circumstances, Pinnacle has failed to demonstrate good cause to join Laidlaw at this juncture.

Therefore, I conclude that leave to amend and to add Laidlaw as a party is not warranted under Rule 16(b)(4). In light of my conclusion, I shall deny Pinnacle's request to extend to Laidlaw the "Agreed Order" currently in place as to Mr. Krone and Naples.

Finally, I note that Pinnacle observes correctly that defendants' Rule 103.3 disclosure statement is inadequate. Rule 103.3(a) states that a disclosure under the Rule must address, in relevant part, the "identity of any parent or other affiliate of a corporate party *and the description of the relationship* between the party and such affiliates." (Emphasis added.) The disclosure filed by defendants on January 12, 2021, indicates that Naples has a corporate affiliation with Laidlaw,

but does not describe that affiliation. *See* ECF 74. The plain language of Rule 103.3(a) requires more. Accordingly, I shall direct defendants to file a new disclosure form.

### III. Conclusion

For the reasons set forth above, I shall deny the Motion (ECF 88).

An Order follows, consistent with this Memorandum.


Date: May 12, 2021                      /s/
                                                                      Ellen L. Hollander
                                                                      United States District Judge