IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WAYPOINT CONSULTING, INC.
f/k/a PINNACLE ADVISORY
GROUP, INC.,

    *Plaintiff*,

    v.

ANDREW J. KRONE, *et al*.,

    *Defendants*.

Civil No. ELH-19-2988

**MEMORANDUM OPINION**

In this breach of contract and trade secrets dispute, plaintiff Pinnacle Advisory Group, Inc. ("Pinnacle" or the "Company"), a private wealth management firm, now known as Waypoint Consulting, Inc. ("Waypoint"), brought suit against Pinnacle's former employee, Andrew J. Krone, as well as Krone's present employer, CapitalRock Financial, LLC d/b/a Naples Wealth Planning ("Naples Wealth"). ECF 1. Although plaintiff's current corporate name is Waypoint Consulting, Inc., the parties refer to plaintiff as "Pinnacle". *See*, *e.g.*, ECF 128 at 1; ECF 141-1 at 1; ECF 142 at 1. Therefore, for the sake of consistency, I shall also refer to plaintiff as "Pinnacle", unless otherwise noted

The suit is rooted in allegations that Krone, who worked for Pinnacle between October 1, 2009, and August 30, 2019, unlawfully misappropriated intellectual property and confidential information from Pinnacle when he left Pinnacle's employment, in violation of an employment agreement. Further, plaintiff claims that Krone used this information to solicit Pinnacle's clients, in violation of his employment agreement with Pinnacle, as well as the Maryland Uniform Trade Secrets Act, Md. Code, § 11-1201 *et seq.* of the Commercial Law Article ("C.L."). In addition, plaintiff contends that defendants breached an implied covenant of good faith and fair dealing.

In an eight-count amended complaint, Pinnacle asserts the following claims: "Declaratory Judgment" (Count One); breach of contract (Count Two); "Breach of The Covenant of Good Faith and Fair Dealing" (Count Three); violation of the Maryland Uniform Trade Secrets Act, C.L. § 11-1201 *et seq.* (Count Four); conversion (Count Five); "Tortious Interference with Contract/Economic Advantage" (Count Six); unfair competition (Count Seven); and unjust enrichment (Count Eight).  *See* ECF 123 (the "Amended Complaint") at 8-17.[1]

Plaintiff has filed a motion for partial summary judgment as to defendants' liability with respect to Count One, Count Two, and Count Six (ECF 124), which is supported by a memorandum of law (ECF 124-1) (collectively, the "S.J. Motion") and several exhibits. Thereafter, defendants filed a cross-motion for summary judgment as to all claims (ECF 134), which is supported by a memorandum of law (ECF 135) (collectively, the "Cross Motion") and various exhibits.  Although the motions have been fully briefed, they are not addressed here.  This Memorandum Opinion pertains to four other matters, as follows.

Plaintiff has filed a "Motion To Exclude The Expert Report, Opinions, And Testimony Of Michael Terrana."  ECF 125.  The motion, filed pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), is supported by a memorandum of law (ECF 125-1) (collectively, the "Expert Motion") and several exhibits.  Defendants oppose the Expert Motion.  ECF 133.  Plaintiff has replied.  ECF 138.

In addition, the parties have filed sealing motions in connection with  the S.J. Motion, the Expert Motion, and the Cross Motion.  Specifically, plaintiff has filed a "Motion To Seal Certain Exhibits Contained In Plaintiff's Motion For Summary Judgment On Liability And Motion To

---

[1] By Memorandum (ECF 121) and Order (ECF 122) of August 26, 2021, the Court granted plaintiff leave to file the Amended Complaint, so as to allow plaintiff to amend the caption of the complaint to reflect Pinnacle's then-current trade name, Waypoint Consulting, Inc.

Exclude The Reports, Opinions, And Testimony Of Michael Terrana".  ECF 128 (the "Pinnacle Sealing Motion").  Defendants oppose the Pinnacle Sealing Motion.  ECF 132.  Plaintiff has not replied, and the time to do has expired.  *See* Local Rule 105.2(a).

Defendants also filed a "Motion To Seal."  ECF 136.  It is supported by a memorandum of law (ECF 136-2) (collectively, the "Defense Sealing Motion") and several exhibits.  The Defense Sealing Motion pertains to seven exhibits that were submitted in support of the Cross Motion.  Plaintiff has not responded to the Defense Sealing Motion, and the time do so has expired.  *See* Local Rule 105.2(a).

I shall also resolve plaintiff's "Motion For Substitution Of Party Pursuant To Rule 25(c)" (ECF 141), which is supported by a memorandum of law (ECF 141-1) (collectively, the "Substitution Motion").  Plaintiff has appended an exhibit to the Substitution Motion.  *See* ECF 141-2.  Defendants oppose the Substitution Motion (ECF 142), supported by two exhibits.  ECF 142-1; ECF 142-2.  And, plaintiff has replied.  ECF 143.

No hearing is necessary to resolve the motions.  *See* Local Rule 105.6.  For the reasons that follow, I shall deny the Expert Motion as premature, and without prejudice.  I shall also deny the Pinnacle Sealing Motion in part and grant it in part.  In addition, I shall deny the Defense Sealing Motion.  And, I shall grant the Substitution Motion.

## I.      Factual Background[2]

For the most part, the underlying facts of this dispute are not germane to the motions addressed in this Memorandum Opinion.  However, some background is helpful to contextualize the issues.

---

[2] The Factual Background is drawn from my Memorandum Opinion of March 18, 2020 (ECF 46); my Memorandum of May 12, 2021 (ECF 102); the S.J. Motion; the Cross Motion; and the exhibits filed in support thereof.

Krone was employed by Pinnacle from October 1, 2009, until August 30, 2019.  ECF 124-1, ¶ 23; ECF 135 at 9-10, ¶¶ 2, 4.  On or about May 5, 2010, Pinnacle and Krone executed an Employment Agreement.  ECF 124-1, ¶ 3; ECF 135 at 10, ¶ 6; *see* ECF 135-3 (the "Employment Agreement").   Among other things, the Employment Agreement included a covenant not to compete, by which Krone agreed that "during the Initial Term of employment and for any Addition [sic] Term, and for one year following the termination of [his] employment for any reason, [he] will not perform or render services or attempt to perform or render services . . . for any customer or client of [Pinnacle] for which [he] . . . has performed any services . . . ."  ECF 135-3, ¶ 9(B). However, the covenant excluded "clients that were served by [Krone] prior to his joining Pinnacle Advisory Group[.]"   *Id.*

Moreover, "during or following his employment with the Company," the Employment Agreement prohibited Krone from "divulg[ing] or disclos[ing], or employ[ing] for any purpose whatsoever, . . . any of the Company's trade secrets or other confidential information that have been obtained by or disclosed to [him] as a result of [his] employment with the Company."  ECF 135-3, ¶ 10(A).

In March 2019, plaintiff met with a Naples Wealth official "about the possibility of working for Naples Wealth."  ECF 124-1, ¶ 25; *see* ECF 135 at 43 (indicating that defendants do not dispute this assertion).  Thereafter, Krone, on at least one occasion, "prepared a schedule[ ] of client names, information, [and] assets under management," and shared that information with a Naples Wealth official.   ECF 124-1, ¶ 30 (citation and internal quotation marks omitted); *see*

ECF 135 at 46 (indicating that defendants did not dispute that Krone shared one schedule of client information with Naples Wealth).[3]

Krone resigned from his position with Pinnacle on August 30, 2019.  ECF 124-1, ¶ 49; ECF 135 at 10, ¶ 4.  Four days later, on September 3, 2019, Krone "became an employee of Naples Wealth."  ECF 124-1, ¶ 50; *see* ECF 135 at 43 (noting that defendants do not dispute this assertion). And, on September 17, 2019, Krone "sent a handwritten note on Naples Wealth letterhead to a Pinnacle client advertising Naples Wealth products, criticizing Pinnacle products, and offering a call with other Naples Wealth employees."  ECF 124-1, ¶ 55; *see* ECF 135 at 43 (noting that defendants do not dispute this assertion).

Pinnacle asserts: "At or around the same time, [it] received notices from other clients that they would be transferring their account from Pinnacle to Naples Wealth."  ECF 124-1, ¶ 56.  And, according to defendants, by the end of 2019, twenty-nine of Krone's non-exempt clients (the "Non-Exempt Clients") terminated their relationship with Pinnacle.  ECF 135 at 13, ¶ 40.  Suit followed on October 14, 2019.  ECF 1.

Pertinent here, Pinnacle seeks, *inter alia*, a declaratory judgment "affirming and enforcing Pinnacle's rights under the terms of the [Employment Agreement]."  ECF 123, ¶ 60.  In addition, in the *ad damnum* clause of each Count, plaintiff asks the Court to "temporarily, preliminarily and permanently enjoin[ ]" Krone and Naples Wealth "from further solicitation of Pinnacle clients," and "from further misappropriating Pinnacle's Confidential Information and Trade Secrets," and to issue an order requiring "the immediate return of all Pinnacle Confidential Information and Trade Secrets." *See*, *e.g.*, *id.* at 9.  Plaintiff also asks the Court to "direct[ ] an accounting" and to

---

[3] Plaintiff avers that Krone transmitted schedules of client information to Naples Wealth on three occasions. ECF 124-1, ¶¶ 35, 40. 41. Defendants maintain that Krone provided Naples Wealth with only one schedule of client information.  ECF 135 at 46.

award "compensatory, incidental, consequential and punitive damages, together with reasonable attorneys' fees, litigation costs, investigation costs, costs of suit, interest, and any such additional relief as this Court may deem necessary, appropriate and just." *Id.*.

Notably, on April 30, 2021, Pinnacle "sold its entire financial planning, asset and investment management business" to a limited liability company, Congress Wealth Management, LLC ("Congress"), pursuant to an Asset Purchase Agreement. ECF 135 at 14, ¶ 54; *see* ECF 137-7 (the "Asset Purchase Agreement" or "APA").[4]  The APA "includes restrictive covenants prohibiting Pinnacle or its shareholders from providing any financial planning, asset or investment management services to its prior clients for 5 years." ECF 135 at 14, ¶ 55; *see* ECF 137-7 at 3-5. And, the APA "defines these prior clients as any clients Pinnacle serviced during the period of April 30, 2019 through April 30, 2021, meaning the restrictions include all of the Non-Exempt Clients forming the basis of Pinnacle's damages claim." ECF 135 at 14, ¶ 56; *see* ECF 137-7 at 2, 4.  Further, "[a]s a result of the restrictive covenants in the [APA], Pinnacle no longer provides financial planning, asset and investment management services." ECF 135 at 14, ¶ 57.

## II.   Expert Motion

Turning first to the Expert Motion, plaintiff asks the Court to "exclude the expert report, opinions, and testimony" of defendants' proposed expert witness, Michael Terrana, pursuant to Rules 104, 401, 403 and 702 of the Federal Rules of Evidence. ECF 125-1 at 6.  Pertinent here, defendants retained Mr. Terrana to refute a report authored by plaintiff's damages expert, R. Christopher Rosenthal, and to offer his own opinion on the same topic. *Id.* at 6-8.

Plaintiff asks the Court to exclude Mr. Terrana as a witness on numerous grounds.  In particular, plaintiff contends that Terrana is unqualified; he has used an incorrect measure of

---

[4] As discussed below, excerpts from the APA have been filed under seal. *See* ECF 137-7.

damages; he relies solely on his experience, which is insufficient; he fails to note any methodology; and his opinions are improper legal opinions. *Id.* at 7-8.

In my view, the Expert Motion is premature. Notably, the S.J. Motion and the Cross Motion concern only the issue of whether there exists a genuine dispute of material fact with respect to defendants' liability to plaintiff.[5] The determination of plaintiff's damages, including the admissibility of evidence that speaks to that determination, has no bearing on the resolution of the S.J. Motion or the Cross Motion. And, in the event that the Court were to determine that defendants are entitled to summary judgment, the Expert Motion would be rendered moot.

Notably, courts have inherent authority to manage their dockets. *See Landis v. North American*, 299 U.S. 248, 254 (1936); *Crown Cent. Petroleum Corp. v. Dep't of Energy*, 102 F.R.D. 95, 98 (D. Md. 1984); *see also United States v. Schneider*, 594 F.3d 1219, 1226 (10th Cir. 2010) ("The power of district courts to manage their dockets is deeply ingrained in our jurisprudence."). Accordingly, rather than allow the Expert Motion to languish on the Docket until the resolution of the S.J. Motion and the Cross Motion, I shall deny it as premature, without prejudice to plaintiff's right to renew the motion at the appropriate juncture.

### III. Sealing Motions

I next address the parties' respective sealing motions. To that end, some further background on the relevant motions and exhibits is necessary.

During discovery, the parties entered a Stipulated Confidentiality Order (the "Order") (ECF 57), which was approved by the Court on August 20, 2020. ECF 58. The Order permitted

---

[5] As mentioned, plaintiff has moved for partial summary judgment as to defendants' liability with respect to Count One, Count Two, and Count Six. *See* ECF 124-1 at 6. However, defendants have asked the Court to enter summary judgment in its favor as to plaintiff's suit in its entirety. *See* ECF 135 at 9.

a party to designate discovery material as "'CONFIDENTIAL,'" if the party, acting in good faith, "believes it contains sensitive personal information, trade secrets, or other confidential research, development, or commercial information which is in fact confidential."  ECF 57, ⁋ 1(a).  In addition, material marked as "'CONFIDENTIAL'" may also be designated as "'ATTORNEYS' EYES ONLY,'" if the designating party believes in good faith that the relevant material has "significant personal or competitive value such that unrestricted disclosure to others would create a substantial risk of serious injury." *Id.* ⁋ 1(b).  Moreover, the Order specifies that any materials submitted to the Court that were previously designated either as Confidential or Attorneys' Eyes Only must be filed under seal. *Id.* ⁋ 2(a)-(b).

Plaintiff has moved to seal five exhibits filed in support of its Expert Motion, as well as three exhibits filed in support of its S.J. Motion. ECF 128.  The sealed versions of these documents are docketed at ECF 126-1 to 126-5 and ECF 127-1 to 127-3, respectively.  Notably, Pinnacle did not submit redacted versions of the relevant exhibits for filing on the public docket.

With respect to the S.J. Motion, plaintiff asks the Court to seal the deposition transcripts of Krone (ECF 127-1) and Brian Bruneau, an employee of Naples Wealth (ECF 127-2), on the ground that "[t]hese transcripts contain specific reference to the identity of clients and indirect reference to their assets under management, investment strategies and preferences."  ECF 128 at 3.  In addition, plaintiff asks the Court to seal ECF 127-3, which contains a "list of client accounts produced by Defendants in response to the November 8, 2019 Agreed Order," because the list reveals "the identity of all client accounts presently or formerly held by Defendants in November of 2019 for any former client of Pinnacle."  ECF 128 at 3.

In connection with the Expert Motion, plaintiff asks the Court to seal the "Expert Report Of  R. Christopher Rosenthal" (ECF 126-1); the "Expert Report Of Michael A. Terrana" (ECF

126-2); the "Rebuttal Expert Report Of R. Christopher Rosenthal" (ECF 126-3); the "Supplemental Response Rebuttal Expert Report Of Michael A. Terrana" (ECF 126-4); and the transcript of Terrana's deposition testimony (ECF 126-5).  Plaintiff indicates that these exhibits should be sealed because they "specifically identify client accounts, fees attributable to certain clients, as well as Pinnacle's internal financials."  ECF 128 at 4.

Concerning the Cross Motion, defendants ask the Court to maintain seven exhibits under seal.  ECF 136-2 at 1-2.  They are docketed at ECF 137-1 to 137-7.  Some of these exhibits were redacted by defendants, although they were still filed under seal.

Specifically, defendants filed the following exhibits under seal: "Pinnacle's June 24, 2009 Offer Letter to Andrew Krone, filed in redacted form" (ECF 137-1); "Excerpts from the May 26, 2021 Deposition of John Hill" (ECF 137-2); "Excerpts from the June 11, 2021 Deposition of R. Christopher Rosenthal" (ECF 137-3); "Excerpts from the June 15, 2021 Deposition of Pinnacle's Corporate Designee" (ECF 137-4); "Phil Carroll's August 27, 2019, email, filed in redacted form" (ECF 137-5); Phil Carroll's September 2019 emails, filed in redacted form" (ECF 137-6); and excerpts from the Purchase Agreement, filed in redacted form (ECF 137-7).  ECF 136-2 at 1-2.

Defendants aver: "Each of the [exhibits] contains information that Plaintiff has designated as either Confidential or Attorneys' Eyes Only under the Protective Order governing the production of documents in this litigation."  ECF 136-2 at 2.  And, defendants state that Pinnacle "has not waived that designation for the purpose of filing before this Court."  *Id.*  Notably, with the Defense Sealing Motion, defendants submitted email correspondence between the parties' counsel.  *See* ECF 136-3.  Consistent with defendants' assertions, the correspondence reflects that plaintiff's counsel refused to waive the Order's requirement that any designated exhibits be filed with the Court under seal.  *See id.*  Plaintiff's counsel maintained that such a waiver would be

inappropriate, in light of the "general confidentiality interests" implicated by the exhibits, and the fact that at least some of the specified exhibits contain "third party personal financial information." *Id.* at 2.

## A.  Standard of Review

Under common law, the public and the press have a qualified right to inspect all judicial records and documents.  *Gonzalez v. Cuccinelli*, 985 F.3d 357, 376 (4th Cir. 2021); *Doe v. Pub. Citizen*, 749 F.3d 246, 265 (4th Cir. 2014); *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004), *cert. denied*, 544 U.S. 949 (2005); *see also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980) ("[H]istorically both civil and criminal trials have been presumptively open.").  "At common law, a district judge must weigh the competing interests of the public's access to judicial proceedings and the interests of the individuals in keeping the information private and of the government in ensuring integrity in its processes."  *Gonzalez*, 985 F.3d at 376.  The public's presumptive common law right of access to judicial documents "can be rebutted only by showing that 'countervailing interests heavily outweigh the public interests in access.'"  *Doe*, 749 F.3d at 266 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).  Only in "'unusual circumstances'" can such a showing be made.  *Doe*, 749 F.3d at 266 (citation omitted).

The common law right of access enjoyed by the press and the public is buttressed by a "more rigorous" right of access provided by the First Amendment.  *Rushford*, 846 F.2d at 253; *see Doe*, 749 F.3d at 265.  "A sealing involving 'judicial records and documents' can be accomplished 'without violating First Amendment rights only if (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, that compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect that

compelling interest.'" *Gonzalez*, 985 F.3d at 376-77 (quoting *In re Washington Post Co.*, 807 F.2d 383, 390, 392 (4th Cir. 1986)); *see Doe*, 749 F.3d at 266.

The Fourth Circuit has instructed that when "presented with a sealing request," a district court must "first 'determine the source of the right of access with respect to each document . . . .'" *Doe*, 749 F.3d at 266 (quoting *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988)). Pertinent here, the First Amendment "right of access attaches to documents and materials filed in connection with a summary judgment motion." *Doe*, 749 F.3d at 267 (citing *Rushford*, 846 F.2d at 253). Likewise, lower courts have also found that the First Amendment standard governs the public's access to filings related to motions concerning the admissibility of expert testimony. *See*, *e.g.*, *Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 221 (S.D.N.Y. 2019) (explaining that documents related to *Daubert* motions are "'judicial documents' subject to a common law and First Amendment presumption in favor of public access") (quoting *Louis Vuitton Malletier S.A. v. Sunny Merchandise Corp.*, 97 F. Supp. 3d 485, 510 (S.D.N.Y. 2015)).

The materials put at issue by the parties' respective sealing motions were filed in connection with either the S.J. Motion, the Cross Motion, or the Expert Motion. Accordingly, the more expansive First Amendment right of public access attaches to those materials.

Of relevance here, *Doe*, 749 F.3d at 269-70, addressed the relationship between a company's interest in protecting sensitive business records from public view and the First Amendment's thirst for sunlight. The Fourth Circuit explained, *id.*:

> A corporation very well may desire that the allegations lodged against it in the course of litigation be kept from public view to protect its corporate image, but the First Amendment right of access does not yield to such an interest. The interests that courts have found sufficiently compelling to justify closure under the First Amendment include a defendant's right to a fair trial before an impartial jury. . . protecting the privacy rights of trial participants such as victims or witnesses . . .

11

and risks to national security . . . . Adjudicating claims that carry the potential for embarrassing or injurious revelations about a corporation's image, by contrast, are part of the day-to-day operations of federal courts . . . .  A corporation may possess a strong interest in preserving the confidentiality of its proprietary and trade-secret information, which in turn may justify partial sealing of court records . . . .  We are unaware, however, of any case in which a court has found a company's bare allegation of reputational harm to be a compelling interest sufficient to defeat the public's First Amendment right of access.

In addition to the common law and the First Amendment, the Local Rules provide a complementary layer of protection for the public interest in disclosure.  Local Rule 105.11 requires a party seeking to seal documents to provide the court with "(a) proposed reasons supported by factual representations to justify the sealing and (b) an explanation why alternatives to sealing would not provide sufficient protection."

Just as a party must furnish the court with concrete reasons for a sealing request, a court must address the specific justifications for a sealing order.  "To seal a document, the district court must (1) give the public adequate notice of a request to seal and a reasonable opportunity to challenge it, (2) consider less drastic alternatives to sealing, and (3) if it decides to seal, state the reasons, supported by specific findings, behind its decision and the reasons for rejecting alternatives to sealing."  *Gonzalez*, 985 F.3d at 376 (citing *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984)).

Moreover, it is immaterial that a party previously designated exhibits as Confidential or Attorneys' Eyes Only.  A party does not have the right to require the court to seal judicial records.  *See Rushford*, 846 F.2d at 254 ("The reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing the First Amendment right of access to judicial documents.").

**B. Analysis**

I first address the Pinnacle Sealing Motion.  As mentioned, plaintiff asks the Court to enter an order sealing the specified exhibits on the ground that these materials have been designated as either Confidential or Attorneys' Eyes Only, pursuant to the Order (ECF 58), approving the parties' confidentiality agreement.  ECF 128 at 3.  Moreover, Pinnacle contends that these materials should remain under seal because they "contain both direct and indirect references to Pinnacle's confidential information and trade secrets" and "the documents contain both direct and indirect references to third-party client's personally identifiable financial information."  *Id.*

However, Pinnacle does not address whether it could protect the sensitivity of the relevant information through alternatives to filing entire exhibits under seal.  It indicates only that "the information cannot simply be redacted because it is relevant to the central issues in this case . . . ."  *Id.* at 4.

In the opposition to the Pinnacle Sealing Motion, defendants argue that "Pinnacle does not have a compelling interest warranting the sealing of its former clients' information in light of the fact that on April 30, 2021, Pinnacle sold its entire financial planning, asset and investment management business to [Congress]."  ECF 132 at 1.  Accordingly, defendants contend that plaintiff "no longer services any of the clients in question and, in fact, is both: (1) contractually prohibited from engaging in this line of work or servicing these clients as a result of certain restrictive covenants contained in the [APA]; and (2) legally prohibited from the same as a result of its recently amended corporate charter, which expressly provides that Plaintiff's business purpose excludes 'financial planning and investment and asset management services.'"  *Id.* at 2 (quoting ECF 111-6 at 2).  Thus, according to defendants, "there can be no compelling need

warranting the sealing of these documents if Pinnacle is in fact legally precluded from providing services to them, let alone engaging in that line of business."  ECF 132 at 2.

In addition, defendants argue that any former client information "can easily be redacted or replaced with pseudonyms without the need to file an entire document under seal."  *Id.*  The Opposition contends: "Once pseudonyms are employed, all information about the value of each client account can remain exposed in a document without any concern about revealing personal client information."  *Id.*  Further, according to defendants, "most courts find that specific client names are not confidential" because "the concern is usually about lists of clients."  *Id.* at 3 (emphasis omitted).  And, defendants point out that plaintiff "has not shown that the client names . . . were part of an expensive client list or have been kept secret," or "why it cannot replace the client names with pseudonyms."  *Id.*

To begin, there is absolutely no basis to justify the sealing of the deposition transcripts or expert reports in their entirety.  *See* ECF 126-1 (Expert Report of Rosenthal); ECF 126-2 (Expert Report of Terrana); ECF 126-3 (Rebuttal Expert Report of Rosenthal); ECF 126-4 (Supplemental Expert Report of Terrana); ECF 126-5 (Deposition Tr. of Terrana); ECF 127-1 (Deposition Tr. of Krone); ECF 127-2 (Deposition Tr. of Bruneau).  These exhibits are replete with information for which sealing is totally unwarranted.  *See*, *e.g.*, ECF 126-1 at 15 (providing Rosenthal's qualifications); ECF 126-2 at 4-5 (stating Terrana's professional background); ECF 127-1 at 14 (Tr. at 48) (asking Krone when he resigned from Pinnacle); ECF 127-2 at 8 (Tr. at 22) (reviewing Bruneau's employment history).

As to ECF 127-3, which is a client list, the clients themselves may have an interest in protecting their identities and/or their financial information.  They did not ask to become embroiled in the litigation, and such information may well be subject to protection.  But, plaintiff offers no

ground to explain why such interests could not be adequately protected through the use of redactions or pseudonyms.

Pinnacle baldly asserts that redaction is not feasible because the information contained within these exhibits is "relevant to the central issues in this case." ECF 128 at 4. But, the Court is at a loss to understand how the centrality of the information at issue justifies sealing entire exhibits, when options less burdensome to the public's right of access are avoidable. Therefore, I shall deny the Pinnacle Sealing Motion in part and grant it in part.

Turning to the Defense Sealing Motion, defendants report that they filed these exhibits under seal in accordance with the Order, because "[e]ach of the . . . [exhibits] contains information that Plaintiff has designated as either Confidential or Attorneys' Eyes Only." ECF 136-2 at 2. Notably, redacted versions of several exhibits were filed. *See* ECF 137-1; ECF 137-5; ECF 137-6; ECF 137-7. However, defendants note: "As these documents are Plaintiff's documents, Plaintiff has the burden of providing justifications for why these documents require filing under seal." ECF 136-2 at 3.

Plaintiff has not responded to the Defense Sealing Motion. Nor has plaintiff presented the Court with any justification as to why those exhibits that were already redacted by the defense should nonetheless remain sealed. *See* ECF 137-1; ECF 137-5; ECF 137-6; ECF 137-7. Moreover, Pinnacle has not explained why the remaining three exhibits, which contain excerpts from deposition transcripts, should be filed under seal in their entirety. *See* ECF 137-2 (Deposition Tr. of John Hill); ECF 137-3 (Deposition Tr. of Rosenthal); ECF 137-4 (Deposition Tr. of Dwight Mikulis).

Indeed, to the extent that plaintiff intended to rely on its earlier assertion to defense counsel that the specified exhibits must be maintained under seal out of consideration of "general

confidentiality interests" (ECF 136-3 at 2), the contention fails because it does not address why alternatives to sealing, such as the use of redactions or pseudonyms, would be inadequate. Therefore, I shall also deny the Defense Sealing Motion in part and grant it in part.

Concerning both the Pinnacle Sealing Motion and the Defense Sealing Motion, the Clerk shall maintain the pertinent exhibits under seal, pending further instructions from the Court. In the interim, counsel shall confer as to proposed redactions for sealed exhibits that were filed without redactions, and, by April 25, 2022, jointly submit proposed redacted versions of the exhibits, suitable for public filing. If counsel cannot agree, however, then each side shall submit proposed redacted exhibits for the Court's consideration. And, if the parties fail to submit such a request by said date, I shall direct the Clerk to lift the seal on the relevant exhibits. Further, as to ECF 137-1; ECF 137-5; ECF 137-6; and ECF 137-7, plaintiff shall advise the Court, by April 25, 2022, as to the grounds that support continued sealing of these exhibits, in light of the redactions that were already made.

## IV. Substitution Motion

Pinnacle has moved to substitute Waypoint Management Consulting, LLC ("WMC") as the plaintiff in this suit. ECF 141-1 at 1. It maintains that substitution is appropriate in light of the execution of a "General Assignment and Assumption Agreement" (the "Assumption Agreement"), entered into between "Waypoint Consulting, Inc. a Maryland corporation f/k/a Pinnacle Advisory Group, Inc. ('Assignor') and Waypoint Management Consulting, LLC, a Maryland limited liability company ('Assignee')." ECF 141-2 at 3.

According to the Assumption Agreement, Pinnacle previously assigned WMC "all of [its] right, title, and interest in [the APA], pursuant to which Assignor sold and transferred substantially

16

all of its assets to Congress . . . ." ECF 141-2 at 3.[6]  And, under the prior agreement, WMC "agreed to accept all of Assignor's assets and rights related to the APA" as well as "to assume all of Assignor's obligations under the APA."  *Id.*

Pursuant to the Assumption Agreement, Pinnacle's remaining assets and liabilities are transferred to WMC.  *See* ECF 141-2 at 3-4.  In particular, the Assumption Agreement "assigned all of Pinnacle's right, title, and interest in this litigation to Waypoint Management Consulting, LLC."  ECF 141-1 at 2; *see* ECF 141-2 at 3-4 (specifying that the Assumption Agreement encompassed "any rights which Assignor has in the litigation involving Waypoint Consulting, Inc. (formerly known as Pinnacle Advisory Group Inc.) brought against the defendants Andrew J. Krone and Capital Rock Financial, LLC (d/b/a Naples Wealth Planning, which was filed on or about 10/14/19").  Further, under the Assumption Agreement, WMC "assumed all remaining or continuing liabilities, duties and obligations of Pinnacle."  ECF 141-1 at 2; *see* ECF 141-2 at 4 ("Assignee hereby assumes and covenants to accept any remaining or continuing liabilities, duties and obligations of Assignor that were not covered under the APA or any Ancillary Agreement.").

Moreover, Pinnacle avers that "[s]uch an assignment is expressly contemplated by the Employment Agreement at issues [sic] in this litigation."  ECF 141-1 at 2 (citing ECF 1-2, at 7 ⁋1(E)).  In particular, Pinnacle points out that the Employment Agreement states: "'This Agreement shall extend to, and be binding upon the Employee, his legal representatives, heirs, and distributees, and upon the Company and all its successors and assigns and the term 'Company' as used herein shall include its successors and assigns whether by merger, consolidation, combination or otherwise.'"  ECF 141-1 at 2 (quoting ECF 1-2, at 7 ⁋ 1(E)).

---

[6] The Court has not been provided with a copy of the prior agreement.

In support of the Substitution Motion, Pinnacle filed the "Certification of Dwight A. Mikulis." ECF 141-2 at 1. He is the "Senior Partner of Plaintiff, Waypoint Consulting, Inc. f/k/a Pinnacle Advisory Group, Inc., and the Managing Member of Waypoint Management Consulting, LLC." *Id.* at 1, ¶ 1. Notably, Mikulis states that he supports the Substitution Motion. *Id.* at 1, ¶ 2.

Defendants oppose the Substitution Motion, asserting that it is "deficient, unnecessary, and seems designed to delay the resolution of this litigation by creating more confusion and complexity in the issues at hand, particularly on the question of standing." ECF 142 at 1.

### A.  Standard of Review

Motions for substitution in light of a transfer of interest that takes place during the course of litigation are governed by Fed. R. Civ. P. 25(c). This Rule states, *id.*:

> If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to be substituted in the action or joined with the original party. The motion must be served as provided in Rule 25(a)(3).

In turn, Rule 25(a)(3) specifies that a motion for substitution must be served "on the parties as provided in Rule 5 and on nonparties as provided in Rule 4." Accordingly, Rule 25(c) "incorporates by reference the provisions of Rule 25(a) on service of the motion" and thus the motion "must be served on persons who are not already parties in the fashion provided in Rule 4 for service of process.[ ]" 7C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1958 (3d ed. 2021) (hereinafter, WRIGHT & MILLER).

By its plain terms, "'Rule 25(a)(3) requires service in the manner that summons is served, not service of a summons itself.'" *Benacquisto v. Am. Express Fin. Corp.*, 00-1980(DSD/DTS), 2021 WL 2229805, at *3 (D. Minn. May 5, 2021) (quoting *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, No. 3:10-CV-0541-GPC-WVG, 2013 WL 12064538, at *3 (S.D. Cal. Jan. 23, 2013)).

In other words, service of the motion through an avenue identified by Rule 4 is sufficient to satisfy the terms of Rule 25(c).  And, of import here, a party may effect service on a corporation, partnership, or association in compliance with Rule 4 by "delivering a copy of the [paper to be served] to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."  Fed. R. Civ. P. 4(h).

"The decision to order substitution is a matter within the sound discretion of the court." *Comsat Corp. v. Melbourne Int'l Commc'n Ltd.*, DKC-02-2680, 2004 WL 1124946, at *1 (D. Md. May 13, 2004).  The primary consideration in resolving a motion pursuant to Rule 25(c) "is whether substitution would 'facilitate the conduct of the litigation.'" *Comm'ns Imp. Exp., S.A. v. Republic of Congo*, 118 F. Supp. 3d 220, 231 (D.D.C. 2015) (quoting *Citibank v. Grupo Cupey, Inc.,* 382 F.3d 29, 32 (1st Cir. 2004)); *see also Advanced Mktg. Grp., Inc. v. Business Payment Sys., LLC*, 269 F.R.D. 355, 359 (S.D.N.Y. 2010) (denying motion to substitute on the ground that the proposed substitution would "lengthen and complicate" the suit).

"Courts will frequently grant substitution where a party has fully transferred its interest to another person or entity." *U.S. Sec. & Exch. Comm'n v. Collector's Coffee Inc.*, 451 F. Supp. 3d 294, 297-98 (S.D.N.Y. 2020) (citing *Potvin v. Speedway LLC*, 891 F.3d 410, 416-17 (1st Cir. 2018)).  This is because, irrespective of the transfer in interest and subsequent substitution, "[t]he merits of the case . . . are still determined vis-à-vis the originally named parties." *Minn. Mining & Mfg. Co. v. Eco Chem, Inc.*, 757 F.2d 1256, 1263 (Fed. Cir. 1985); *see also In re Covington Grain Co., Inc.*, 638 F.2d 1362, 1364 (5th Cir. 1981) ("Rule 25(c) is not designed to create new relationships among parties to a suit but is designed to allow the action to continue unabated when an interest in the lawsuit changes hands.").  Indeed, the focus on "considerations of convenience

and economy . . . prevails because Rule 25(c) has no bearing on the substantive relationship between the parties." *Comm'ns Imp. Exp., S.A.*, 118 F. Supp. 3d at 231.

### B.  Analysis

Defendants marshal three challenges to the Substitution Motion.  First, they maintain that Pinnacle has not offered any evidence to suggest that the Substitution Motion was served on WMC, as required by Fed. R. Civ. P. 25(c).  ECF 142 at 7-8.  Further, defendants complain that plaintiff's proposed substitution will further complicate the matter of "the current Plaintiff's standing to enforce" its employment covenants, which "calls into question the validity of its 'assignment' of interests to WMC."  *Id.* at 2.  And, defendants warn that "[t]here is a significant concern that Plaintiff's proposed substitution will require discovery to be not only re-opened, but additional discovery be conducted, which will extensively delay the resolution of this entire matter."  *Id.*

In Pinnacle's view, defendants' concerns are misplaced.  It maintains that it has complied with the procedural requirements of Fed. R. Civ. P. 25(c).  ECF 143 at 1.  With respect to defendants' argument as to plaintiff's standing, Pinnacle asserts: "There is no issue of standing, especially as Defendants neither challenge the assignability of claims under the Employment Agreement . . . nor the [Assumption Agreement]."  *Id.* at 2.  And, Pinnacle notes that there is no reason to believe that the proposed substitution would prolong litigation, other than defendants' conjecture.  *Id.*

Concerning defendants' procedural argument, defendants assert that the Court should deny the Substitution Motion on the ground that plaintiff has failed to demonstrate its compliance with the procedural requirements of Rule 25(c).  They contend: "Plaintiff did not serve its Motion on the non-party it proposes to add as the substitute plaintiff,  WMC, despite the explicit requirement under Rule 25 that WMC be served with the Motion in accordance with Rule 4."  ECF 142 at 7-8.

20

As stated, Rule 25(c), by way of Rule 25(a)(3), requires that a moving party "must" effect service of the motion on a nonparty in accordance with Rule 4.  Indeed, the service requirement outlined in Rule 25(c) is a "strict" one.  *Trustees of Chicago Regional Council of Carpenters Pension Fund v. Conforti Const. Co., Inc.*, No. 09 C 322, 2013 WL 3771415, at *1 (N.D. Ill. Jul. 17, 2013).  "'Without proper service of process, a court cannot exercise personal jurisdiction'" over a party to be joined to a suit.  *Id.* (quoting *Naylor v. Streamwood Behavioral Health Sys.*, No. 11 C 50375, 2012 WL 5499441, at *6 (N.D. Ill. Nov. 13, 2012).

But, defendants' objection is unavailing.  Notably, it appears that Pinnacle did comply with the terms of Rule 4.  As mentioned, a plaintiff may effect service on a limited liability corporation, such as WMC, by delivering a copy of the motion to an officer of the limited liability corporation.  Fed. R. Civ. P. 4(h).  And, in this case, Pinnacle provided the Court with a certification from the managing partner of WMC, Dwight Mikulis, in which he said: "I make this Certification in support of Plaintiff's Motion for Substitution of Party pursuant to FED. R. CIV. P. 25(c)."  ECF 141-2 at 1, ⁋ 2.  In my view, the submission of a certification from an officer of WMC, in which the officer expresses his support for the Substitution Motion, indicates that Pinnacle delivered the Substitution Motion to him.

Generally speaking, the Federal Rules of Civil Procedure require service for the purpose of ensuring that an entity to be joined to a suit is afforded effective notice of the action.  *See* 4 WRIGHT & MILLER, § 1063 ("The primary function of Rule 4 is to provide the mechanism for bringing notice of the commencement of an action to the defendant's attention . . . .[ ]").  In the face of WMC's consent to substitution, this is not a concern.  *See* ECF 141-2 at 1, ⁋ 2; *see also Beiersdorf, Inc. v. Int'l Outsourcing Servs.*, LLC, 07-C-888, 2008 WL 11456225, at *1 (E.D. Wis.

Sept. 30, 2008) (explaining that only the entity to be joined to a suit pursuant to Rule 25 may object to the sufficiency of service).  Accordingly, I decline to deny the Substitution Motion on this basis.

Defendants also argue that the Substitution Motion should be denied because, in their view, it would risk complicating the arguments advanced in the Cross Motion (ECF 135 at 18-23) with respect to plaintiff's standing to seek enforcement of the restrictive covenants specified in Count One of the Amended Complaint.  *See* ECF 142 at 11-14; *see also* ECF 123, ¶¶ 56-60.  In particular, defendants contend that "an employer must have a legitimate business interest in enforcing a restrictive employment covenant under Maryland law."  ECF 142 at 12.  And, in order to have a legitimate business interest, "the employer must be engaged in the same industry that it seeks to restrict its former employee's participation in."  ECF 142 at 12 (citing *Seneca One Finance, Inc. v. Bloshuk*, 214 F. Supp. 3d 457, 461 (D. Md. 2016)).  Accordingly, "once that employer stops participating in such industry, its legitimate business interest is destroyed."  ECF 142 at 12.

And, defendants note that, pursuant to the APA, Pinnacle has sold its assets to Congress, "including its interest in all of the clients at issue in this lawsuit."  *Id.* (citing ECF 137-7).  As a result, Pinnacle is "contractually barred from servicing any of the clients in the instant litigation until April 2026."  ECF 142 at 12.  Further, under the terms of the Purchase Agreement, Pinnacle "and its Shareholders also agreed to cease engaging in the Investment Management Services industry entirely for a total of five years, and this restriction explicitly includes owning (in part or in whole), being employed by or being affiliated with a business that is engaged in the Investment Management Services business during the restricted period."  *Id.*

According to defendants, these developments deprive Pinnacle of a legitimate business interest in enforcing the restrictive covenants set forth in the Employment Agreement.  As noted, they contend that Pinnacle's lack of a legitimate business interest calls "[p]laintiff's standing" into

"question." *Id.* at 13.   Moreover, they assert: "As Plaintiff no longer has any legitimate business interests in the Investment Managements Services industry, it cannot transfer or assign such interests to WMC." *Id.*   Defendants also posit: "Any claim by Plaintiff to have assigned any terminated interests, including its extinguished legitimate business interests in enforcement, to WMC would certainly raise questions about the validity of the assignment." *Id.*

Pinnacle does not dispute defendants' characterization of the Purchase Agreement, nor refute defendants' argument concerning the impact of the Purchase Agreement on WMC's ability to participate in the investment management services industry.   But, it rejects defendants' contention that the Purchase Agreement deprives it of standing to pursue its claim for declaratory relief.   ECF 143 at 2-3.   Further, Pinnacle argues that the sale of its business does not "extinguish[ ] its right to enforce a restrictive covenant." *Id.* at 3.   And, it asserts: "Defendants fail to cite to any case which stands for the proposition that a business loses its ability to enforce a restrictive covenant against an employee who has breached an employee agreement prior to the sale of the business." *Id.*

In my view, this disagreement goes to the merits of the parties' positions concerning the viability of plaintiff's claims for declaratory and injunctive relief, as set forth in their respective motions for summary judgment.   *See* ECF 124-1 at 17-22; ECF 135 at 18-23.   I am unaware of any case law that suggests that a plaintiff's ability to assign an interest in litigation turns on whether the claims at issue will bear fruit.   Rather, it is sufficient for the purpose of resolving the Substitution Motion to note that WMC has acquired Pinnacle's interest in this suit, pursuant to the terms of the Assumption Agreement.

And, even assuming the soundness of defendants' arguments concerning plaintiff's standing to seek the relief specified in the Amended Complaint, it does not follow that the proposed

23

substitution would complicate the arguments advanced in the parties' summary judgment motions. As an initial matter, Rule 25(c) is merely a procedural device; "[t]he merits of the case . . . are still determined vis-à-vis the originally named parties."  *Minn. Mining & Mfg. Co.*, 757 F.2d at 1263. *Cf. Advanced Mktg. Grp., Inc.*, 269 F.R.D. at 359-60 (denying motion for substitution in part because the transfer of interest conferred on the proposed defendant "a degree of protection from any judgment imposed against [the existing defendant] because [the proposed defendant] assumed the role of the successor in interest to [the existing defendant's] assets only," and not its liabilities). Defendants contend only that the restrictive covenants included in the APA deprived plaintiff of a legitimate business interest in the enforcement of the restrictive covenants contained within the Employment Agreement.  ECF 142 at 12-13.

But, by defendants' own admission, WMC is also bound by the restrictive covenants included in the APA.  *Id.* at 11.  Further, the Assumption Agreement conferred on WMC "any rights" that Pinnacle had with respect to this suit, and provided that WMC has assumed "any" of Pinnacle's "remaining or continuing liabilities, duties and obligations . . . ."  ECF 141-2 at 3-4. Under these circumstances, WMC appears to have a legitimate business interest in the enforcement of the restrictive covenants contained within the Employment Agreement only insofar as Pinnacle did before it.

Viewing plaintiff's claim for declaratory relief in this light, it appears that the claim will succeed or fail irrespective of whether the Substitution Motion is granted.  Accordingly, granting the proposed substitution would not require defendants to advance new or alternative arguments concerning WMC's standing to enforce the Employment Agreement's restrictive covenants.

Finally, defendants urge the Court to deny the Substitution Motion because substitution could risk prolonging the resolution of this case.  In particular, they contend that the Substitution

24

Motion did not indicate whether WMC consented to the Substitution Motion or whether it would adopt Pinnacle's discovery responses.  ECF 142 at 9.  According to Defendants, were WMC to refuse to do either, "Defendants would have no choice but to conduct additional discovery regarding WMC's claims and assertions in this matter," which would involve "serving new Interrogatories on WMC and deposing WMC's corporate designee."  *Id.* at 9-10.  And, "[u]nder this scenario, trial would not be scheduled for another year, pushing the total duration of this case to possibly four years."  *Id.* at 10.

Plaintiff assures the Court that defendants' parade of horribles will not materialize.  ECF 143 at 2.  It claims: "WMC has consented to the substation [sic].  WMC and Pinnacle are represented by the same counsel.  Neither WMC nor Pinnacle has proposed a re-opening of discovery.  Pinnacle has not asked this Court to open 'Pandora's Box of uncertainty,' it has simply proposed to substitute WMC as the plaintiff following the Assumption and Assignment Agreement."  *Id.*

As I see it, plaintiff's assurances adequately assuage any concern that WMC will attempt to prolong the litigation by seeking to reopen discovery or altering the positions Pinnacle adopted with respect to the pending motions for summary judgment.  And, in any event, the Court need not grant a request to reopen discovery.  Accordingly, in light of plaintiff's representations, I am persuaded that granting the Substitution Motion will not prolong the course of the litigation.

At bottom, the Assumption Agreement conclusively establishes that WMC has become the party in interest in this suit.  *See* ECF 143-2 at 3-4.  Thus, despite defendants' arguments to the contrary, substitution of WMC is appropriate.  *See Danaher Corp. v. Travelers Indemnity Co.*, 10-CV-121(JPO), 2020 WL 6712193, at *4-5 (S.D.N.Y. Nov. 16, 2020) (finding that substitution was appropriate where an agreement and affidavit "paint[ed] a clear picture of . . . who the party in

interest now is," and substitution "would neither frustrate other parties' efforts to obtain relief nor delay and complicate th[e] litigation").   Accordingly, I shall grant the Substitution Motion.

**V. Conclusion**

In light of the foregoing, I shall deny the Expert Motion, without prejudice to plaintiff's right to renew it at a later time.

Further, with respect to the Pinnacle Sealing Motion and the Defense Sealing Motion, I shall deny them in part and grant them in part.  However, for the time being, I shall direct the Clerk to maintain the relevant exhibits under seal, until otherwise instructed.

In the interim, counsel shall confer and submit, if feasible, proposed redacted versions of the pertinent exhibits, suitable for public filing, all due by April 25, 2022. If the parties cannot agree, however, then each side shall submit proposed redacted exhibits for the Court's consideration.  And, if no action is taken by said date, I shall instruct the Clerk to lift the seal on the relevant exhibits.  Further, as to redacted exhibits that were filed under seal, plaintiff shall submit a justification for continued sealing, due by April 25, 2022.

In addition, I shall grant the Substitution Motion.  WMC shall become the named plaintiff in this suit.

An Order follows, consistent with this Memorandum Opinion.


Date: March  22, 2022                                    _____/s/_____
                                                                            Ellen L. Hollander
                                                                            United States District Judge